# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

No. 22-3076

FERNANDO NUNEZ,

Appellant,

v.

TOM W. WOLF, *et al.*,

Appellees

CORRECTIONS APPELLEES' BRIEF IN SUPPORT OF
SUMMARY JUDGMENT

On Appeal from the Order of the United States District Court for the Middle
District of Pennsylvania at Civil Action No. 3:15-cv-01573, granting Defendants'
Motion for Summary Judgment

JENNIFER SELBER
General Counsel

TIMOTHY HOLMES
Chief Counsel

Pennsylvania Department of Corrections     BY:    ABBY TROVINGER
Office of Chief Counsel                         Assistant Counsel
1920 Technology Parkway             Attorney ID No. 308329
Mechanicsburg, PA  17050
Email: atrovinger@pa.gov

Dated:  May 17, 2023                   Counsel for Corrections Appellees

# **TABLE OF CONTENTS**

STATEMENT OF RELATED CASES ....................................................................1

COUNTER-STATEMENT OF THE CASE ............................................................2

SUMMARY OF THE ARGUMENT ....................................................................10

STATEMENT OF THE SCOPE AND STANDARD OF REVIEW ......................11

ARGUMENTS .......................................................................................................12

    I.   SUMMARY JUDGMENT SHOULD BE AFFIRMED AS TO NUNEZ'S CONGREGATE PRAYER CLAIM BECAUSE HIS RELIGION IS NOT SUBSTANTIALLY BURDENED, APPELLEES HAVE COMPELLING SAFETY, SECURITY, AND RESOURCE-RELATED INTERESTS, AND DENYING HIS REQUEST BUT PERMITTING HIM TO PRAY SEATED AND QUIETLY WITH VISITORS IS THE LEAST RESTRICTIVE MEANS TO ACHIEVE THOSE INTERESTS. ..........................................12

    II.  SUMMARY JUDGMENT SHOULD BE AFFIRMED AS TO NUNEZ'S CONJUGAL VISITS CLAIM BECAUSE HIS RELIGION IS NOT BEING SUBSTANTIALLY BURDENED, THE GOVERNMENT HAS COMPELLING SAFETY, SECURITY, AND HEALTH INTERESTS, AND DENYING HIS REQUEST IS THE LEAST RESTRICTIVE MEANS TO ACHIEVE THOSE INTERESTS................................................................19

    III.SUMMARY JUDGMENT SHOULD BE AFFIRMED AS TO NUNEZ'S CIRCUMCISION CLAIM BECAUSE THE GOVERNMENT HAS COMPELLING HEALTH AND COST-RELATED INTERESTS IN DECLINING ELECTIVE SURGERIES, AND DENYING HIS REQUEST IS THE LEAST RESTRICTIVE MEANS TO ACHIEVE THOSE INTERESTS. ..............................................................................25

CONCLUSION .....................................................................................................29

# TABLE OF AUTHORITIES

## Cases

*Block v. Rutherford*,
  468 U.S. 576 (1984) ................................................................19
*Cowher v. Pike County Correctional Facility*,
  2019 WL 3302415 (USMD Pa. 2019) ....................................26
*Cutter v. Wilkinson*,
  544 U.S. 709 (2005) .......................................................... 14, 19
*Dunn v. Secretary Pennsylvania Dept. of Corrections*,
  490 Fed. Appx. 429 (3rd Cir. 2012) ......................................19
*Ellis v. Westinghouse Electric Co., LLC*,
  11 F.4th 221 (3rd Cir. 2021) ............................................ 11, 12
*Fields v. Paramo*,
  2019 WL 4640502 (E.D. Ca. 2019) .......................................27
*Gerber v. Hickman*,
  291 F.3d 617 (9th Cir. 2002) .................................................20
*Heleva v. Kramer*,
  330 Fed. Appx. 406 (3rd Cir. 2009) ......................................19
*Henry v. Department of Corrections*,
  131 Fed. App. 847 (3rd Cir. 2005) .................................. 14, 15
*Holt v. Hobbs*,
  574 U.S. 352 (2015) .......................................................... 13, 19
*Imprisoned Citizens Union v. Shapp*,
  451 F. Supp. 893 (E.D.Pa. 1978) ..........................................20
*Jones v. Nichols*,
  639 Fed. Appx. 43 (9th Cir. 2016) ........................................20
*Ky. Dep't Corr. v. Thompson*,
  490 U.S. 454 (1989) ...............................................................19
*McCray v. Sullivan*,
  509 F.2d 1332 (5th Cir. 1975) ...............................................20
*Overton v. Bazzetta*,
  539 U.S. 126 (2003) ...............................................................19
*Owens v. Kernan*,
  2016 WL 3361885 (USDC E.D. Cal. 2016) ...........................22
*Ramirez v. Collier*,
  142 S. Ct. 1264 (2022) ...........................................................13
*Reynolds v. Wagner*,
  128 F.3d 166 (3rd Cir. 1997) .................................................25

*Riley v. DeCarlo*,
    532 Fed. App. 23 (3rd Cir. 2013) ........................................................19
*Robinson v. Superintendent Houtzdale SCI*,
    693 Fed. Appx. 111 (3rd Cir. 2017) .....................................................19
*Sharp v. Johnson*,
    669 Fed. Appx. 144 (3rd Cir. 2012) .....................................................19
*Shields v. Foston*,
    2013 WL 3456964 (E. D. Cal., Jul. 9, 2013)........................................22
*TD Bank N.A. v. Hill*,
    928 F.3d 259 (3rd Cir. 2019).................................................................12
*Thomas v. Corbett*,
    90 A.3d 789 (Pa. Cmwlth. 2014)...........................................................20
*Thomas v. Corbett*,
    2019 WL 1312873 (Pa. Cmwlth. 2019) ................................................21
*U.S. ex rel. Wolfish v. Levi*,
    439 F.Supp. 114 (S.D.N.Y. 1977) .........................................................20
*Vega v. Lantz*,
    2009 WL 3157586 (D.C. Conn. 2009)...................................................18
*Vega v. Lantz*,
    2013 WL 6191855 (D.C. Conn. 2013)...................................................26
*Washington v. Cate*,
    2014 U.S. Dist. LEXIS 12402, at *4-5 (E.D. Cal. 2014)......................22
*Washington v. Klem*,
    497 F.3d 272 (3rd Cir. 2007)........................................................ 13, 19
*Watson v. Christo*,
    837 Fed. Appx. 877 (3rd Cir. 2020) ....................................... 13, 14, 19
*Winslow v. Prison Health Serv.*,
    406 F. App'x 671 (3rd Cir. 2011) ..........................................................25

## Statutes

18 U.S.C.A. § 3626(A) ...............................................................................15
42 U.S.C. § 2000cc–1(a)(1)–(2) ................................................................12
Section 3626...............................................................................................15
§ 3626(B) ...................................................................................................15

## Rules

Federal Rule of Appellate Procedure 25(b)(c)............................................1
Federal Rule of Appellate Procedure 32(a)(5)..........................................31
Federal Rule of Appellate Procedure 32(a)(6)..........................................31

Federal Rule of Appellate Procedure 32(a)(7)(A) ....................................................31
Federal Rule of Appellate Procedure 32(a)(7)(C) ....................................................31
Federal Rule of Appellate Procedure 32(f) .............................................................31
Federal Rule of Civil Procedure 56(a) .....................................................................12

**<u>Regulation</u>**

37 Pa. Code 93.3(h)(6) ..............................................................................................7

## **COUNTER-STATEMENT OF ISSUES PRESENTED**

I.    SHOULD SUMMARY JUDGMENT BE AFFIRMED AS TO NUNEZ'S CONGREGATE PRAYER CLAIM BECAUSE HIS RELIGION IS NOT SUBSTANTIALLY BURDENED, APPELLEES HAVE COMPELLING SAFETY, SECURITY, AND RESOURCE-RELATED INTERESTS, AND DENYING HIS REQUEST BUT PERMITTING HIM TO PRAY SEATED AND QUIETLY WITH VISITORS IS THE LEAST RESTRICTIVE MEANS TO ACHIEVE THOSE INTERESTS?

Suggested Answer:  Yes.

II.    SHOULD SUMMARY JUDGMENT BE AFFIRMED AS TO NUNEZ'S CONJUGAL VISITS CLAIM BECAUSE HIS RELIGION IS NOT SUBSTANTIALLY BURDENED, THE GOVERNMENT HAS COMPELLING SAFETY, SECURITY, AND HEALTH INTERESTS, AND DENYING HIS REQUEST IS THE LEAST RESTRICTIVE MEANS TO ACHIEVE THOSE INTERESTS?

Suggested Answer:  Yes.

III.    SHOULD SUMMARY JUDGMENT BE AFFIRMED AS TO NUNEZ'S CIRCUMCISION CLAIM BECAUSE THE GOVERNMENT HAS COMPELLING HEALTH AND COST-RELATED INTERESTS IN DECLINING ELECTIVE SURGERIES, AND DENYING HIS REQUEST IS THE LEAST RESTRICTIVE MEANS TO ACHIEVE THOSE INTERESTS?

Suggested Answer:  Yes.

## **STATEMENT OF RELATED CASES**

Counsel is unaware of any case Nunez has pending before this Court that involves the same or similar issues involved in this appeal.

1

## **COUNTER-STATEMENT OF THE CASE**

Appellant Fernando Nunez ("Nunez") is a Pennsylvania state inmate.  On April 9, 2019, Nunez filed the operative amended complaint in this case.  (Doc. 34). Remaining Defendants are Pennsylvania Department of Corrections ("Department"), Secretary John Wetzel, and then Department Regional Deputy Secretary Tabb Bickell. (*Id.*)  In the amended complaint, Nunez describes himself as a devout Muslim and claims that his religious rights are being violated under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") in three ways. First, he alleged that the Department' policy prohibiting conjugal visits violates his Islamic beliefs.  Specifically, he avers that he was permitted to marry in 2013, but was not permitted to consummate his marriage in accordance with his religious beliefs.  (Doc. 34 at ¶¶ 8-9).  He also sought ongoing conjugal visits and other forms of intimacy as understood in Islamic practice to include "light talk, love expressions, touching, caressing, kissing and fondling." (Doc. 34 at ¶11).  Second, Nunez sought to be able to engage in group prayer in the visiting room with his visitors.  (Doc. 34 at ¶ 68).  Third, he demanded a circumcision for religious reasons.  (Doc. 34 at ¶¶ 90-95).

Nunez sought injunctive relief in the form of "enjoining the Defendants… from enforcing the Administrative Code regulation and Department policies at issue, so as to not continue to substantially burden the Nunez's religious beliefs" and

"Order the Defendants in his action to implement a family/conjugal visit program, and execute policies and practices which serve to accommodate Nunez's religious beliefs." (Doc. 34 at ¶ 106).

## Congregate Prayer

Department Policy DC-ADM 812 titled "Inmate Visiting Privileges" lays out rules for inmates and staff to follow relating to inmate visitation. (JA146, 189-224, 236). If inmates wish to pray with visitors, they are permitted to sit next to the visitor and pray quietly so as not to interrupt other inmates during their visits in the same area. (JA238). However, no inmate is permitted to pray communally with visitors in any demonstrative way in the visiting room. (JA239).

In January 2015, Nunez requested a religious accommodation to engage in congregate prayer in private with his family during contact visits. (JA145, 238, 175-177). In the request, Nunez indicates that his religion mandates that one "Pray standing, but you cannot, then pray sitting. And if you cannot, then pray laying on your side." (JA177). Nunez states that his Islamic beliefs require him to pray in the following manner: "(1) standing; (2) the opening takbeer; (3) reciting surah Al-Fatihah; 4) bowing; 5) rising from bowing; 6) prostrating on all seven limbs; 7) erecting oneself from it; 8) sitting between the two prostrations; 9) remaining tranquil (i.e. not rushing) during all of the pillars; 10) maintaining the sequential

order; 11) the final tashehhud; 12) sitting for it; 13) sending salaat on the Prophet, and; 14) the final two tasleems." (JA049).

Nunez wanted his own private visiting room in which to pray "away from other visitors." (JA175). He acknowledged that the prayer would be disruptive to other visitors using the visiting room at the same time, and suggests that he should receive a private room to conduct his visits. (JA175). His request for congregational private prayer was denied because the request "would not only create a safety concern, but would also pose a major distraction to families of other inmates meeting their loved ones." (JA145, 159). Further, "The institution cannot provide every inmate with [a] private visiting room for congregational prayers with family members." (JA145, 159). However, Nunez was informed that he could sit next to his visitor and pray quietly so as not to interrupt other inmates during their visits in the same area. (JA159, 238).

Nunez filed grievance number 562984 relating to the private congregational prayer issue, and his grievance was denied because inmates share the visiting room and that space is not for the purpose of practicing religion. (JA146, 251). It was noted that he is permitted to quietly pray in a seated position with his guests. (JA146, 251). The Department upheld the denial on appeal at the first level, and again at the second level, based on the same rationale. (JA146, 248-251).

Major Scott Woodring, Chief of Security for the Department and an employee with over 25 years of experience in the correctional field in many different capacities, attested to the rationale for the lack of conjugal visits. (JA235-236). The Department is responsible for the safety and security of all inmates, which includes preventing contraband from entering the prisons. (JA147, 236).

At the district court, Major Woodring attested to the security rationale for proscribing congregate prayers between inmates and visitors in the manner that Nunez requested—namely the introduction of contraband into the prisons through visitors. (JA150-152, 238). Nunez poses a specific security concern when it comes to contraband being brought into the prison. (JA150, 239). Security personnel could not observe whether contraband was being passed between Nunez and his visitor(s) while they were in a private room, prostrating themselves, in the same way as they could if the visit occurred in the designated visiting room. (JA150, 239).

The needs of other inmates would also be impacted if Nunez was permitted to engage in congregate prayer in the shared visiting room. (JA150, 239). Visitation for other inmates would be disrupted given the noise and distraction. (JA151, 239). Further, Nunez' requested accommodation would convert a neutral meeting space into one used for religious purposes. (JA151, 239). If Nunez was given a private room to engage in visits and group prayers, other inmates would seek the same accommodations and the Department would be expected to provide a private room

for every inmate seeking group prayer with visitors. (JA151, 240). All of these requests could only occur during the same basic time frame when visiting hours are permitted each day. (JA151, 240). The Department would need to supply space, choose who gets to use it, and staff each room with security personnel at or near the same times. (JA151, 240). If other inmates were not granted the opportunity Nunez was for a private room, feelings of resentment could manifest into assaults very quickly in the prison setting. (JA151, 240).

## Conjugal Visits

Department Policy DC-ADM 812 also lays out permissible contact during visitation. (JA146, 189-224, 236). Inmates cannot have sexual contact with a visitor, but are permitted to "share a brief kiss and embrace" when meeting and departing from a visit. (JA146, 197, 222, 236). Department Policy DC-ADM 821 titled "Inmate Marriages" provides rules for inmates and staff to follow relating to inmate matrimony and spousal contact. (JA146, 225-234). In that policy, the Department permits "a brief kiss" after marriage. (JA147, 233, 236).

As mentioned above, Nunez poses a direct security threat regarding introduction of contraband into the prison. (JA147, 236). Security would have a very difficult time monitoring whether any contraband was being passed between inmates and visitors during long kisses, long embraces, and/or sexual acts. (JA147, 236). Nunez could not engage in sexual acts in the same visiting room where other

visits are taking place; he would need to be afforded his own private room for the conjugal visit. (JA148, 237). If Nunez were granted such an accommodation, other inmates would expect the same, and the Department does not have the space to accommodate such requests. (JA148, 237-238).

Further, in Pennsylvania, all contact visits in a prison are to take place under official supervision. 37 Pa. Code 93.3(h)(6). A corrections officer would need to supervise the sexual acts of others, so the visit would no longer be private and the corrections officer would be subjected to an untenable situation. (JA148, 237). Additionally, space and time for visitation at the Department is limited—at the State Correctional Institution at Huntingdon, where Nunez was located at the time he filed suit in this case, the visiting hours are from 8:00am to 8:00pm, 7 days per week. (JA148, 237). No Department prison could accommodate a private room for inmates requesting conjugal visits during visiting hours on any given day. (JA148, 237).

Additionally, the Department is responsible for the health of inmates to the extent that can be controlled. (JA148, 243). According to Dr. Arlene Seid, former Medical Director for the Department and a licensed physician for over 20 years, permitting inmates to have sexual contact with visitors increases the likelihood that sexually transmittable infections (STIs) will be introduced into the prisons, which leads to a host of other problems. (JA148, 242-243). Particularly concerning STIs in an institutional setting include: Hepatitis, HIV, Syphilis, Herpes, Chlamydia and

Gonorrhea. (JA148, 243). STIs can often be difficult to detect by even the infected individual themselves. (JA149, 243). Increased STI rates in the institutions will result in medical issues for inmates. (JA149, 243). STIs can often be very contagious and some can last a lifetime. (JA149, 243). STIs in particular can cause cancer, infertility, and even death. (JA149, 243). Hepatitis B and Hepatitis C in particular can cause permanent liver damage; if gone undetected, many can cause permanent damage and even death. (JA149, 244).

To complicate matters, STIs often are not detected unless an inmate self-discloses. (JA149, 244). Increased STI rates in the institutions would be detrimental to the population and will result in high costs of medical treatment, if treatment is even an option. (JA149, 244). There would be no way for the Department to ensure that safe sex was occurring during a conjugal visit in order to safeguard that STIs were not being passed from one participant to the other. (JA149, 244). Finally, the Department could not ensure that the sexual encounters were consensual at any given moment, which could result in a crime being committed at the prison. (JA150, 244).

In January 2015, Nunez requested a religious accommodation while in state prison to engage in conjugal visits with his spouse. (JA145, 162-166). Nunez's request for conjugal visits was denied "due to safety, security and health concerns". (JA145, 159). Nunez then filed grievance number 564319 relating to the conjugal visits issue, which was denied for the same reasons that the original accommodation

was denied. (JA183-186). It was noted that he is permitted to briefly embrace and kiss his spouse at the beginning and end of a visit. The denial was upheld on appeal at the first level, and again at the second level. (JA183-186).

## Circumcision

The Department provides medically necessary care to all inmates pursuant to DOC Policy 13.2.1, Section 1(A). (JA152, 245, 264-271). Pennsylvania State Correctional Institutions are not currently equipped to conduct medically-necessary surgeries, so all surgeries occur off site. (JA152, 245). When an inmate has to be transported to an outside medical facility for a medical procedure, he must be accompanied by at least two or more security staff, depending on the inmate Custody Level. (JA152, 245). The Department pays for the cost of medically-necessary surgeries. (JA152, 245). The Department provides some medical care to inmates on a case-by-case basis pursuant to Policy 13.2.1, Section 1(B). (JA152, 245, 265). There are some medical services that the Department does not provide pursuant to Policy 13.2.1, Section 1(C). Department policy 13.2.1, Section 1(C)(1) indicates: "Medical services not provided by the Department include, but are not limited to…cosmetic surgery or services." (JA153, 245, 268).

In January 2015, Nunez requested a religious accommodation while in state prison to be ritually circumcised. (JA145, 173). Nunez' request for circumcision was denied because "circumcision is an elective surgery and is not medically

necessary", and also because of the costs involved for and after elective surgeries. (JA145, 159).  The Department also cited to Policy 13.2.1 as indicative that the Department does not pay for cosmetic surgeries.  (JA145, 159).  Nunez then filed grievance number 564054 relating to the circumcision issue.  (JA146, 262).  His grievance was denied because the Department does not permit elective surgeries. (JA146, 262).  The denial was upheld on appeal at the first level, and again at the second level, based on the same rationale.  (JA146, 254-263).

Circumcision is considered a cosmetic surgery, sometimes referred to as elective surgery.  (JA153, 246).  Traditional circumcision surgery generally costs approximately $3,500.00.  (JA153, 246).  Proper hygiene techniques will allow for clean genital areas without the need to be circumcised.  (JA153, 246).

Nunez would need to go off-site to have the procedure done.  Risks of complication include: bleeding, infection, and wound dehiscence (opening up of the wound after surgery is finished), Glans hyperesthesia, skin bridges and meatal stenosis.  (JA154, 246).  When Nunez returns to the prison, if he suffers complications, the Department would have to provide and pay for the treatment of those issues.  (JA153, 246).

## SUMMARY OF THE ARGUMENT

Summary judgment should be affirmed as to Nunez's congregate prayer claim because his religion is not being substantially burdened.  He can pray on his own,

and he can pray with visitors, even within the confines of Department rules.  He simply cannot pray in the exact way he wishes.  Further, the government has compelling safety, security, and resource-related interests in denying all inmates demonstrative congregate prayer in the general visiting room or a private visiting room.  Finally, denying his request but permitting him to pray seated and quietly with visitors is the least restrictive means to account for the compelling interests.

Summary judgment should be affirmed as to Nunez's conjugal visits claim because his religion is not being substantially burdened because he can still share a brief kiss and embrace with his spouse.  The government has compelling safety, security, and health interests to deny conjugal visits, and denying his request is the least restrictive means to achieve the compelling interests.

Summary  judgment should be affirmed as to Nunez's circumcision claim because the government has compelling health and cost-related interests in declining elective surgeries, and there are no least restrictive means available.

## STATEMENT OF THE SCOPE AND STANDARD OF REVIEW

Scope of review in an appellate court of a summary judgment ruling at the trial court level is "plenary, meaning we review anew the District Court's summary judgment decisions, applying the same standard it must apply."  *Ellis v. Westinghouse Electric Co., LLC*, 11 F.4th 221, 229 (3rd Cir. 2021).  To prevail, "the moving party must show that 'there is no genuine dispute as to any material fact and

[it[ is entitled to judgment as a matter of law.'" *Id.* at 229-230 (citing Fed. R. Civ. Pro. 56(a)). This Court "may affirm [a district court's judgment] on any basis supported by the record." *TD Bank N.A. v. Hill*, 928 F.3d 259, 270 (3rd Cir. 2019).

## **ARGUMENTS**

I. **SUMMARY JUDGMENT SHOULD BE AFFIRMED AS TO NUNEZ'S CONGREGATE PRAYER CLAIM BECAUSE HIS RELIGION IS NOT SUBSTANTIALLY BURDENED, APPELLEES HAVE COMPELLING SAFETY, SECURITY, AND RESOURCE-RELATED INTERESTS, AND DENYING HIS REQUEST BUT PERMITTING HIM TO PRAY SEATED AND QUIETLY WITH VISITORS IS THE LEAST RESTRICTIVE MEANS TO ACHIEVE THOSE INTERESTS.**

Section 3 of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") creates statutory protection for inmates in the exercise of their religion, providing, in relevant part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability" unless the government establishes that the burden on religion furthers a "compelling governmental interest" through the "least restrictive means of furthering that compelling government interest." 42 U.S.C. § 2000cc–1(a)(1)–(2).

Under RLUIPA, a substantial burden exists where: "1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial

pressure on an adherent to substantially modify his behavior and to violate his beliefs." *Washington v. Klem*, 497 F.3d 272, 280 (3rd Cir. 2007).

"A plaintiff bears the initial burden of proving that a prison policy implicates his religious exercise." *Ramirez v. Collier*, 142 S. Ct. 1264, 1277 (2022) (internal citations and quotations omitted). "Although RLUIPA protects any exercise of religion, whether or not compelled by, or central to, a system of religious belief, a prisoner's requested accommodation must be sincerely based on a religious belief and not some other motivation." *Id*. "The burden on the prisoner's religious exercise must also be substantial. Once a plaintiff makes such a showing, the burden flips and the government must demonstrate that imposition of the burden on that person is the least restrictive means of furthering a compelling governmental interest. *Id*.

The least-restrictive-means standard requires the government to show that it lacks other means of achieving its government interest(s) without imposing a substantial burden on the exercise of religion. *Holt v. Hobbs*, 574 U.S. 352, 364–65 (2015). If there is an alternative available, the government must show that it has considered and rejected those means. *Washington,* 497 F.3d at 284.

Prison safety and security are compelling government interests under RLUIPA. *Watson v. Christo*, 837 Fed. Appx. 877, 880 (3rd Cir. 2020) (holding that prison's denial of tefillin for Jewish inmate did not violate RLUIPA because prison had compelling government interest in preventing inmate from having access to

leather straps based on safety and security concerns).  Health and safety matters are also  compelling governmental interests under RLUIPA. *Cutter v. Wilkinson*, 544 U.S. 709, 725 (2005).  If inmate requests for religious accommodations "become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution, the facility would be free to resist the imposition." *Id*. at 726.

Congress enacted RLUIPA "mindful of the urgency of discipline, order, safety, and security" in prisons, and anticipated courts would give "due deference to the experience and expertise" of prison officials "in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Watson*, 837 F. App'x at 882–83 (quoting *Cutter*, 544 U.S. at 723)).  "Congress recognized that prisons are unique, and their resources are limited… Diverting resources to monitor the activities of one inmate each weekday places the entire unit at risk." *Watson*, 837 F. App'x at 882-83.  Under such circumstances, the least restrictive means to further those compelling interests may be denial of the activity altogether.  *Id*. at 883.

Inmates are not constitutionally entitled to particular type of visitation; limitations are part of the ordinary incidents of prison life.  *Henry v. Department of Corrections*, 131 Fed. App. 847, 849-851 (3rd Cir. 2005).  When prison rules do not

preclude visits, but rather control "*how* these visits proceed", constitutional rights are protected. *Id*. at 851 (emphasis in the original).

Nunez sought to engage in congregational prayer with visitors in a private visiting room.[1] The prayer includes 14 steps with prostrations and recitations throughout. When he sought to engage in those acts via a religious accommodation request, his request was denied, but he was informed that he would be permitted to engage in a quiet, seated prayer with his visitors in order to balance his needs with those of other inmates and visitors using the same designated visiting room.

Nunez does not allege that he cannot pray, nor does he aver that he cannot pray with visitors. In fact, he is permitted to pray on his own in the privacy of his cell, and/or seated quietly with his visitors in the visiting room. Nunez' claim is really that he cannot pray *in the exact way he demands*. His ability to practice his religion is not substantially burdened by the inability to have a private room for congregational prayer.

---

[1] In all three of Nunez's claims, he seeks injunctive relief. The Prison Litigation Reform Act ("PLRA") requires that such relief "shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give *substantial* weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." 18 U.S.C.A. § 3626(A) (emphasis added). Section 3626 goes on to state "The court shall not order any prospective relief that requires or permits a government official to exceed his or her authority under State or local law or otherwise violates State or local law, unless: **(i)** Federal law requires such relief to be ordered in violation of State or local law; **(ii)** the relief is necessary to correct the violation of a Federal right; and **(iii)** no other relief will correct the violation of the Federal right." § 3626(B).

Even if the Court finds that Nunez suffered a substantial burden by the prison's restrictions, the Department has demonstrated several compelling penological interests in not permitting congregational prayer sessions between inmates and visitors. Denying Nunez's request for congregate prayer in private with his family during visits serves the compelling penological interest of preventing contraband from entering the prisons via private contact visits. According to the Department's witness at the trial court level, Nunez poses a security concern when it comes to contraband being brought into the prison. Additionally, it would be very difficult for security personnel to observe whether contraband is being passed between Nunez and his visitor(s) if they are in a private room, standing up and bowing down repeatedly, and able to conceal items from security keeping watch.

Denying Nunez's request for congregate prayer in private with his family during visits also serves the compelling penological interest of utilizing resources of staffing, space, and time to best serve all inmates and not just Nunez. If Nunez engages in his congregate prayer in the way he wishes, no one else can reasonably meet at the same time given the noise and distraction. That takes away visiting time from other inmates, and converts a currently neutral meeting space into one being used for religious purposes. The Department would then face a new problem relating whether one religion was being given preference over another, receiving more prayer time than another, etc.

Scarcity of resources is a concern as well—if Nunez were to be given a private room to engage in visits and group prayers, other inmates would surely expect the same treatment and the Department would be obliged to provide such an accommodation for every inmate seeking group prayer with visitors. All of these requests would, of necessity, be for the same basic time frame when visiting hours are permitted at SCI-Huntingdon from 8:00am to 8:00pm each day. This would result in the need to supply a virtually limitless number of rooms at or near the same time, and to staff each one with security personnel. If other inmates were not granted such an opportunity but Nunez was, feelings of resentment could manifest into assaults very quickly in the prison setting. In addition, inmates would likely demand/expect related accoutrements, *i.e.*, prayer rugs, crosses, kneeling benches, ceremonial pipes, prayer books, meditation pillows, etc. Such an approach is simply unworkable, and under RLUIPA need not be accommodated due to the compelling governmental interest of prison security and scarcity of resource.

With regard to the least restrictive alternative analysis, the Department considered Nunez's request which was not feasible, and afforded him a least restrictive alternative with which to engage in prayer with his visitors. He was permitted to pray with them sitting down quietly in the visiting room. In the prison context, this is the only least restrictive alternative.

17

In an analogous case, the US District Court of Connecticut reviewed a case where an inmate requested congregate prayer with other Muslim inmates five times per day pursuant to RLUIPA. *Vega v. Lantz*, 2009 WL 3157586 (D.C. Conn. 2009). The state prison had a regulation that permitted its inmates to engage in one congregate prayer per week. *Id*. at 2. In support of its denial, the prison argued compelling government interests of "prison security and order". *Id*. at 10. The Court agreed with the prison, holding: "[T]he regulation is in furtherance of compelling government interests of prison security and order and is the least restrictive means of furthering that compelling government interest. The defendants permit the plaintiff to pray in his cell, and their policy provides that weekly congregate prayer be held for each religion." *Id*. at 10. The Court went on to say: "RLUIPA does not require officials to make the burdensome alterations to prison scheduling and facility use that the plaintiff seeks, particularly in light of the security concerns that the defendants identify. The defendants' motion for summary judgment is granted as to this RLUIPA claim." *Id*.

Likewise, in addition to other viable security concerns, the Department here also has similar concerns regarding Nunez's request to engage in congregate prayer *with visitors*. Specifically, his request to pray in private with visitors poses heightened security concerns, such as the entry of contraband into the prison. Therefore, prohibiting him from congregate prayer in the visiting room or having

18

access to a private room, but allowing him to pray quietly with visitors in the supervised visiting room, is the least restrictive means of carrying out those interests.[2]  Summary judgment should be affirmed as to the dismissal of Nunez's RLUIPA congregate prayer claims.

## II.    SUMMARY JUDGMENT SHOULD BE AFFIRMED AS TO NUNEZ'S CONJUGAL VISITS CLAIM BECAUSE HIS RELIGION IS NOT SUBSTANTIALLY BURDENED, THE GOVERNMENT HAS COMPELLING SAFETY, SECURITY, AND HEALTH INTERESTS, AND DENYING HIS REQUEST IS THE LEAST RESTRICTIVE MEANS TO ACHIEVE THOSE INTERESTS.

Prisoners have no constitutional rights while incarcerated to contact or conjugal visits.  *Ky. Dep't Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (no due process right to unfettered visitation); *Block v. Rutherford*, 468 U.S. 576, 585 – 88 (1984) (pretrial detainees have no constitutional due process right to contact visits); *see also Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (observing that "freedom of

---

[2] Nunez alleges in his brief that the Department's decision not to focus on *Holt v. Hobbs*, 574 U.S. 352 (2015), is "grievous".  (Doc. 25-1, p. 12).  Appellees respectfully disagree.  While it is true that *Holt* alleged a RLUIPA violation, that case involved a restriction placed on facial hair, and is not factually analogous to any of the issues in this case involving visitation and elective medical procedures.  Moreover, the claim that the Department committed reversible error by using "legitimate" rather than "compelling" is fatal when describing the government interests involved is incorrect.  The term "legitimate" has been used to characterize and discuss government interests in RLUIPA cases before and after the *Holt v. Hobbs* decision.  See *Watson v. Christo*, 837 Fed. App. 877 (3rd Cir. 2020); *Robinson v. Superintendent Houtzdale SCI*, 693 Fed. Appx. 111 (3rd Cir. 2017); *Riley v. DeCarlo*, 532 Fed. App. 23 (3rd Cir. 2013); *Dunn v. Secretary Pennsylvania Dept. of Corrections*, 490 Fed. Appx. 429 (3rd Cir. 2012); *Sharp v. Johnson*, 669 Fed. Appx. 144 (3rd Cir. 2012); *Heleva v. Kramer*, 330 Fed. Appx. 406 (3rd Cir. 2009); *Washington v. Klemm*, 497 F.3d 272 (3rd Cir. 2007); *Cutter v. Wilkinson*, 544 U.S. 709 (2005).  Appellees applied the correct RLUIPA standard at the trial court level.  (J.A.123-124).  The trial court applied the correct RLUIPA standard to dismiss the claims.  (J.A.007-009).

association is among the rights least compatible with incarceration"); *Jones v. Nichols*, 639 Fed. Appx. 43, 434 (9th Cir. 2016) (inmates have no constitutional right to an overnight family visit).  "The loss of the right to intimate association is simply part and parcel of being imprisoned for conviction of a crime." *Gerber v. Hickman*, 291 F.3d 617, 621 (9th Cir. 2002).

Conjugal visits in particular raise concerns "in the realm of mores and public attitudes outside the proper sphere of judges as judges." *U.S. ex rel. Wolfish v. Levi*, 439 F.Supp. 114 (S.D.N.Y. 1977), aff'd in part, rev'd on other grounds, 573 F.2d 118 (2nd Cir. 1978), judgment reversed on other grounds, 441 U.S. 520 (1979). "Whatever one judge or another might think about the difficult policy choices and psychological factors—for example, about the question of strictly 'conjugal' visits in the traditional sense and their possible effects upon unmarried inmates—the decision of such matters must be left in the foreseeable future for elected representatives of the people." *Wolfish*, 439 F.Supp. at 143.

In Pennsylvania, the Commonwealth Court reviewed this issue and held that "a correctional authority's policy to deny conjugal visits does not deny an inmate any constitutional right."  *Thomas v. Corbett*, 90 A.3d 789, 794 (Pa. Cmwlth. 2014) (citing *McCray v. Sullivan,* 509 F.2d 1332, 1334 (5th Cir. 1975), *cert. denied,* 423 U.S. 859 (1975); *Imprisoned Citizens Union v. Shapp,* 451 F. Supp. 893, 898–99 (E.D.Pa. 1978)).  On summary judgment review later, the same court held that the

Department's rejection of conjugal visits furthered a compelling state interest in ensuring the health and safety of inmates and abating criminal activity. *Thomas v. Corbett*, 2019 WL 1312873, at *3 (Pa. Cmwlth. 2019) ("*Thomas II*").

In *Thomas II*, the Court applied the least restrictive means analysis to conjugal visits as follows:

> Thomas argues that an outright ban is not the least restrictive means because the institution allegedly has movable homes on its property. On the other hand, DOC contends that the nature of conjugal visits requires a complete ban instead of a restriction because these visits require privacy, could spread communicable diseases, create an opportunity to bring in contraband, and may allow for the commission of crimes. Despite Thomas's contentions, we see no dispute concerning any material facts as to the least restrictive means prong. DOC has a clear responsibility to ensure the health and safety of inmates and to ensure that criminal activity is abated. DOC cannot abate crime and ensure the health and safety of inmates by permitting conjugal visits, even in a restricted manner. Any conceivable restriction, due to the inherently private nature of a conjugal visit, would still result in health and safety concerns. Accordingly, we will grant summary relief in DOC's favor with respect to the conjugal visit policy.

*Id.*, at *4.  Though this Court is not bound by state court rulings, the exact same reasoning applies to this case for all the Department objectives reiterated above.

Further, case law in other areas of the country strongly supports the position that Nunez has no right to conjugal visits.  The federal district court in the Eastern District of California faced a very similar case in which a California state inmate

21

claimed that the prison policy prohibiting those convicted of life sentences from engaging in conjugal visits violated RLUIPA. *Owens v. Kernan*, 2016 WL 3361885 (USDC E.D. Cal. 2016). The district court dismissed the claim, holding: "This court previously considered and rejected an inmate's claim that the denial of conjugal visits violates RLUIPA, finding that the right to marry, like many other rights, is subject to substantial restrictions as a result of incarceration and that although the right to marriage is constitutionally protected for inmates, the right to marital privacy and conjugal visits while incarcerated is not." *Shields v. Foston*, 2013 WL 3456964 (E. D. Cal., Jul. 9, 2013).

Another California district court case reasoned through the same issues one year later and held that the denial of conjugal visits does not violate RLUIPA: "Neither the U.S. Supreme Court nor the Ninth Circuit has yet addressed whether a sincerely held religious belief necessitating conjugal visits must be accommodated under RLUIPA…. The lower courts that have addressed the issue appear, thus far, to uniformly conclude that such beliefs must give way to the need for institutional security." *Washington v. Cate*, 2014 U.S. Dist. LEXIS 12402, at *4-5 (E.D. Cal. 2014) (internal citations omitted).

Here, Nunez cannot have sexual contact with his spouse, but he is permitted to "share a brief kiss and embrace" when meeting and departing from a visit and "a brief kiss" after marriage. Such contact fulfills several of Nunez's wishes and

alleged religious obligations regarding showing affection and love toward his spouse, and making her feel special and desired. Thus, he is not suffering a substantial burden by not being able to engage in sex acts with her.

However, assuming that a substantial burden exists for purposes of this analysis, the Department has several legitimate penological interests in preventing Nunez from doing so. Denying Nunez's request for conjugal visits serves the compelling penological interests of preventing contraband from entering the prisons via private contact visits; utilizing resources of staffing, space, and time to best serve all inmates and not just Nunez; and preventing staff from being in the position of supervising a sexual encounter between Nunez and his wife.

First, the Department is responsible for the safety and security of all inmates, which includes preventing contraband from entering the prisons. Nunez has shown himself to pose a direct threat regarding introduction of contraband into the Department. Additionally, it would be very difficult to monitor whether any contraband was being passed between the parties during long kisses, long embraces, and/or sexual acts.

Second, as a related issue, Nunez could not engage in sexual acts in the same visiting room where other visits are taking place. He would need to be afforded his own private room for the conjugal visit. If Nunez is granted such an accommodation, certainly all inmates would expect the same, and the Department does not have the

space to accommodate such requests. Since all contact visits in a prison are to take place under official supervision, a corrections officer would need to supervise the sexual interaction. This scenario could not have been contemplated by the Legislature and would require an absurd result.

From a different side of this issue, denying Nunez's request for conjugal visits serves the legitimate penological interest of preventing sexually transmittable infections from entering and spreading around the prison population. The Department is responsible for providing a healthy environment for all inmates. Permitting inmates to have sexual contact with visitors increases the likelihood that sexually transmittable infections will be introduced into the prisons. These infections can be difficult to detect, difficult to treat, and very contagious. Increased rates in the institutions would be detrimental to the inmate population and result in high costs of medical treatment. These infections can cause cancer, infertility, and even death; Hepatitis B and Hepatitis C in particular can cause permanent liver damage. To complicate matters, they are often not detected unless an inmate self-discloses. There would be no way for the Department to ensure that safe sex was occurring during a conjugal visit in order to ensure that sexually transmitted infections were not being passed from one participant to the other.

Finally, safety during the conjugal visit is a compelling government interest. The Department would have no way of ensuring that the sexual encounters were

consensual at any given moment, which could result in a crime being committed at the prison. Merely because Nunez asserts that he has a healthy relationship with his spouse does not make it so on a particular visit. Denying his request for conjugal visits serves the compelling government interest of preventing sexual assaults on government property.

As explained above, the RLUIPA analysis includes whether the Department's prohibition on conjugal visits is a least restrictive means. As the Commonwealth Court reasoned, total prohibition is the least restrictive means to carry out the prison's compelling interests, and there is no viable alternative. Summary judgment should be affirmed as to the dismissal of Nunez's RLUIPA conjugal visit claims.

**III. SUMMARY JUDGMENT SHOULD BE AFFIRMED AS TO NUNEZ'S CIRCUMCISION CLAIM BECAUSE THE GOVERNMENT HAS COMPELLING HEALTH AND COST-RELATED INTERESTS IN DECLINING ELECTIVE SURGERIES, AND DENYING HIS REQUEST IS THE LEAST RESTRICTIVE MEANS TO ACHIEVE THOSE INTERESTS.**

"Prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment." *Winslow v. Prison Health Serv.*, 406 F. App'x 671, 674 (3rd Cir. 2011) (citing *Reynolds v. Wagner*, 128 F.3d 166, 175 (3rd Cir. 1997) and holding that the 8th Amendment was not violated by prison declining to pay for hernia that did not medically require surgery).

In a recent case before this district court in 2019, *Cowher v. Pike County Correctional Facility*, a federal inmate argued that the DOC Defendants were deliberately indifferent to his medical needs when they denied his request for back or hip surgery because it was not medically necessary bur rather elective in nature. *Cowher v. Pike County Correctional Facility*, 2019 WL 3302415 (USMD Pa. 2019) (unreported).  The Court held that since the medical professionals provided care and indicated that the procedure was not necessary, it was not cruel and unusual to decline the inmate's request for surgery.  *Id*. at 13-15.

No Court has held that a request for cosmetic surgery sought for religious reasons under RLUIPA must be provided.  There are legitimate penological reasons for this. As explained in by the United States District Court of Connecticut in *Vega v. Lantz*, where an inmate sought a circumcision for religious reasons:

> The DOC's preclusion of elective surgeries for prisoners is reasonably related to legitimate penological interests. Elective surgery could alter a prisoner's identifying characteristics. It would be eminently unreasonable to allocate taxpayer money to elective surgeries for prisoners, and permitting prisoners with means to purchase elective surgery would sow discord by emphasizing wealth disparities. Finally, remaining uncircumcised does not prevent plaintiff from taking advantage of other available means of religious exercise such as prayer and study.

*Vega v. Lantz*, 2013 WL 6191855 (D.C. Conn. 2013).  Based on this reasoning, the *Vega* Court concluded that corrections officials had met the burden to show a

compelling governmental interest to deny religious circumcisions.  The United States District Court of the Eastern District of California has held the same.  *Fields v. Paramo*, 2019 WL 4640502 (E.D. Ca. 2019) (applying the *Turner* analysis and finding in the prison's favor on all four prongs).

Denying Nunez's request for ritual circumcision serves the legitimate penological interest of conserving government resources, including the cost of surgery, hospital services, security transportation staff to and from the hospital, and the cost of any potential post-surgery complications.   Appellees concede here that the denial of Nunez's request to be circumcised with government funds places a substantial burden on his religious exercise.  However, prison resources do not allow for inmates to be afforded with government funds to pay for cosmetic surgeries.

The Department provides medically necessary care to all inmates pursuant to DOC Policy 13.2.1.  Pennsylvania state prisons are not equipped to conduct medically-necessary surgeries, so all surgeries occur off site.  When an inmate has to be transported to an outside medical facility for a medical procedure, he must be accompanied by at least two or more security staff, depending on the inmate Custody Level.  The Department pays for the cost of medically-necessary surgeries.  There are some medical services that the Department does not provide pursuant to Policy 13.2.1, Section 1(C).  Department policy 13.2.1, Section 1(C)(1) indicates: "Medical

services not provided by the Department include, but are not limited to…cosmetic surgery or services."

Circumcision is considered a cosmetic surgery, sometimes referred to as elective surgery which generally costs approximately $3,500.00. Nunez claims that he wants to be ritually circumcised in order to keep his genital area clean for religious purposes. Proper hygiene techniques allow for clean genital areas without the need to be circumcised. If Nunez were able to get the procedure done, he would then come back into the prison with the potential for further complications, which the Department would have to pay for. Risks of complications include: bleeding, infection, and wound dehiscence (opening up of the wound after surgery is finished), Glans hyperesthesia, skin bridges and meatal stenosis.

Nunez argues that the cosmetic/elective aspect of the surgery has no bearing on whether it is required on religious grounds. But the two are necessarily intertwined because Nunez seeks not only permission *to be* circumcised, but also seeks to compel the Commonwealth government to *pay* for his circumcision. Valid compelling governmental interests support the Department's decision to deny this relief.

Nunez also argues that the government's alleged permission of and payment for sexual reassignment surgery is at odds with the Department's position in this

case, and favors a secular procedure over a religious one.  This argument is at best misleading.

First, no facts of record describe the Department's position with respect to transgender health care during the time frame of the events in this lawsuit.  Instead, Appellant simply refers to policy change language removing sexual reassignment surgery from an express list of non-provided medical services.  In any event, Nunez failed to preserve any equal protection argument and no such argument was raised or developed factually below.

Appellees have several compelling health and safety interests in denying Nunez's request for a circumcision, and the outright denial was the least restrictive means of addressing those interests.

## <u>CONCLUSION</u>

For all of the above reasons, this Court should affirm the district court ruling granting Appellees' motion for summary judgment in its entirety.

Respectfully submitted,

s/ Abby N. Trovinger
Abby N. Trovinger, Assistant Counsel
Attorney ID 308329
PA Department of Corrections
Office of Chief Counsel
1920 Technology Parkway
Mechanicsburg, PA  17050
atrovinger@pa.gov

Dated: May 17, 2023

## <u>CERTIFICATE OF BAR MEMBERSHIP, IDENTICAL ELECTRONIC FILING, AND VIRUS DETECTION</u>

I hereby certify that I am a member of the bar of this Court.

I hereby certify that, pursuant to Local Rule 31.1(c), the text of the electronically filed version of Appellees' Brief is identical to the hard copy filed with the Court.

I hereby certify that that this Brief has been scanned by the Commonwealth's anti-virus software and no viruses have been detected.

Respectfully submitted,

s/ Abby N. Trovinger
Abby N. Trovinger, Assistant Counsel
Attorney ID 308329
PA Department of Corrections
Office of Chief Counsel
1920 Technology Parkway
Mechanicsburg, PA  17050
atrovinger@pa.gov

Dated: May 17, 2023

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(A) because this brief does not exceed 30 pages, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief was prepared in a proportionately spaced typeface using Microsoft Word 14-point Times New Roman font.

Respectfully submitted,

s/ Abby N. Trovinger
Abby N. Trovinger, Assistant Counsel
Attorney ID 308329
Pennsylvania Department of Corrections
Office of Chief Counsel
1920 Technology Parkway
Mechanicsburg, PA  17050
atrovinger@pa.gov

Dated: May 17, 2023

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

FERNANDO NUNEZ,                          :
                                         :
                    Appellant            :    No. 22-3076
      v.                                 :
                                         :
TOM W. WOLF, et al.,                     :
                                         :
                    Appellants           :

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document, Brief for Corrections Appellees, has been filed electronically and is available for viewing and downloading from the ECF system by Counsel for Appellant and therefore satisfies the service requirements under *F.R.A.P. 25(b)(c)*.

Respectfully submitted,

s/ Abby N. Trovinger
Abby N. Trovinger, Assistant Counsel
Attorney ID 308329
Pennsylvania Department of Corrections
Office of Chief Counsel
1920 Technology Parkway
Mechanicsburg, PA 17050

Dated: May 17, 2023          atrovinger@pa.gov