No. 22-3076

# United States Court of Appeals for the Third Circuit

FERNANDO NUÑEZ, JR.,

*Plaintiff–Appellant,*

v.

TOM M. WOLF, GEORGE LITTLE, TABB BICKELL,

*Defendants–Appellees.*

Appeal from the United States District Court
for the Middle District of Pennsylvania,
No. 3:15-cv-01573
(Judge Jennifer P. Wilson)

## REPLY BRIEF FOR PLAINTIFF-APPELLANT FERNANDO NUÑEZ, JR.

Nicholas R. Reaves
YALE LAW SCHOOL
FREE EXERCISE CLINIC
1919 Pennsylvania Ave. N.W.
Suite 400
Washington, D.C. 20006
Tel.: (202) 955-0095
nicholas.reaves@yale.edu

Gordon D. Todd
Ellen Crisham Pellegrini
Cody L. Reaves
Victor T. Hiltner
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Tel.: (202) 736-8000
Fax: (202) 736-8711
epellegrini@sidley.com

*Counsel for Fernando Nuñez, Jr.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................ii

INTRODUCTION ............................................................................. 1

ARGUMENT ................................................................................... 4

I.    DOC's Denial Of Mr. Nuñez's Request To Engage In Congregate Prayer Violates RLUIPA........................................................ 4

    A.    DOC Has No Compelling Interest In Denying Mr. Nuñez's Request To Engage In Congregate Prayer ............... 5

    B.    DOC's Ban On Congregate Prayer Is Not The Least Restrictive Means Of Furthering Its Purported Interests ....... 12

II.   DOC's Denial Of Mr. Nuñez's Request For Conjugal Visits To Consummate His Marriage Violates RLUIPA ......................... 15

    A.    DOC Has No Compelling Interest In Denying Mr. Nuñez's Request To Consummate His Marriage ................ 16

    B.    DOC's Ban On All Conjugal Visits, Even For Marriage Consummation, Is Not The Least Restrictive Means of Furthering Its Purported Interests ...................................... 19

III.   DOC's Denial of Mr. Nuñez's Request For A Religious Circumcision Violates RLUIPA .................................................... 23

    A.    DOC Has No Compelling Interest In Denying Mr. Nuñez's Religious-Based Request For A Circumcision ........ 25

    B.    DOC's Ban On All Circumcisions, Even Those With A Religious Basis, Is Not The Least Restrictive Means Of Furthering Its Purported Interests ...................................... 30

CONCLUSION ................................................................................. 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
  508 U.S. 520 (1993) ............................................................ 29

*City of Boerne v. Flores,*
  521 U.S. 507 (1997) ............................................................ 23

*Cowher v. Pike Cnty. Corr. Facility,*
  No. 3:16-cv-02259, 2019 WL 3302415 (M.D. Pa. July 23,
  2019) .................................................................................. 24

*Fields v. Paramo,*
  No. 2:16-cv-1085, 2019 WL 4640502 (E.D. Cal. Sept. 24,
  2019) .................................................................................. 24

*Fulton v. City of Philadelphia,*
  141 S. Ct. 1868 (2021) ....................................... 7, 18, 19, 22

*Gad v. Northampton Cnty.,*
  No. 18-cv-3900, 2023 WL 2026630 (E.D. Pa. Feb. 15, 2023) ............ 24

*Gov't Emps. Ret. Sys. of Virgin Islands v. Gov't of Virgin Is-
  lands*, 995 F.3d 66 (3d Cir. 2021) ...................................... 30

*Holt v. Hobbs,*
  574 U.S. 352 (2015) ................................................... *passim*

*Little Sisters of the Poor Saints Peter & Paul Home v. Penn-
  sylvania*, 140 S. Ct. 2367 (2020) ......................................... 4

*Mast v. Fillmore Cnty.,*
  141 S. Ct. 2430 (2021) ...................................................... 22

*Ramirez v. Collier,*
  142 S. Ct. 1264 (2022) ............................................... *passim*

*Reed v. Town of Gilbert,*
  576 U.S. 155 (2015) ........................................................... 29

*Robinson v. Superintendent Houtzdale SCI,*
  693 F. App'x 111 (3d Cir. 2017) ................................. 2, 7, 16

*Shields v. Foston*,
     No. 2:11-cv-0015, 2013 WL 3456964 (E.D. Cal. July 9,
     2013) ................................................................................... 21

*Thomas v. Corbett*,
     No. 458 M.D. 2013, 2019 WL 1312873 (Pa. Commw. Ct.
     Mar. 22, 2019) ..................................................................... 20

*Turner v. Safley*,
     482 U.S. 78 (1987) .................................................................. 6

*Vega v. Lantz*,
     No. 3:04-cv-1215, 2009 WL 3157586 (D. Conn. Sept. 25,
     2009) ............................................................................. 13, 14

*Vega v. Lantz*,
     No. 3:04-cv-1215, 2013 WL 6191855 (D. Conn. Nov. 26,
     2013) ..................................................................................... 24

*Washington v. Klem*,
     497 F.3d 272 (3d Cir. 2007) ...................................... 4, 19, 31

*Watson v. Christo*,
     837 Fed. App'x 877 (3d Cir. 2020) .................................. 6, 14

*Winslow v. Prison Health Servs.*,
     406 F. App'x 671 (3d Cir. 2011) ......................................... 23

*Yellowbear v. Lampert*,
     741 F.3d 48 (10th Cir. 2014) .............................................. 12

## Statutes and Regulations

42 U.S.C. § 2000cc-3(c) .......................................................... 25

42 U.S.C. § 2000cc-5(7)(A) ..................................................... 16

Cal. Code. Regs., tit. 15 § 3177 ............................................. 21

# INTRODUCTION

DOC's response brief confirms that this Court should reverse the district court and grant Mr. Nunez's request to engage in congregate prayer, to consummate his marriage, and to receive a religious-based circumcision. DOC showed a clear misunderstanding of RLUIPA at summary judgment, most notably by failing to mention the Supreme Court's seminal decision in *Holt v. Hobbs*, 574 U.S. 352 (2015), *see* JA115–142, and by offering declarations from prison officials that claim only a "legitimate penological interest" rather than the "compelling interest" RLUIPA requires. The district court showed that it too fundamentally misunderstood the strict scrutiny inquiry mandated by RLUIPA, citing *Holt* just once, failing to cite the Court's opinion in *Ramirez v. Collier*, 142 S. Ct. 1264 (2022)—which had come out months earlier—and repeatedly misapplying both the compelling-interest and least-restrictive-means test.

Now before this Court, rather than correct course, DOC doubles down. Most remarkably, DOC tries to defend its "decision not to focus on *Holt*" by claiming that this pivotal case in RLUIPA jurisprudence "involved a restriction placed on facial hair, and is not factually analogous

to any of the issues in this case." Resp. Br. 19 n.2.  Nonsense.  *Holt*'s seismic impact and critical importance in this case comes not from its facts but from how it clarified what RLUIPA requires before the government may impose a substantial burden on an incarcerated person's religious exercise: that "the Government demonstrate that the compelling interest test is satisfied"—not just say it; that courts take on "the responsibility[] conferred by Congress" to apply strict scrutiny—not afford "unquestioning deference" to prison officials; and that the "least-restrictive-means standard is exceptionally demanding"—not a rubber stamp.  574 U.S. at 362–65.

In its brief, DOC claims that its blunder in claiming only a "legitimate penological interest[]" rather than a "compelling" one is not fatal because post-*Holt* cases use the term "legitimate."  Resp. Br. 19 n.2.  However, the cases DOC cites as support use this term only to explain that this "is the wrong legal test" under RLUIPA, *see Robinson v. Superintendent Houtzdale SCI*, 693 F. App'x 111, 114, 117 (3d Cir. 2017).  Taking the mistaken view that a "legitimate" interest is enough, DOC's litters its brief with this self-defeating claim.  *See, e.g.*, Resp. Br. 23 ("[DOC] has several legitimately penological interests"); 24 ("serves the legitimate

penological interest"); 26 ("There are legitimate penological reasons for this.").

DOC's efforts on the least-restrictive-means test take this same puzzling approach, essentially ignoring its burden under RLUIPA. Though this "exceptionally demanding" standard requires DOC to *demonstrate* that it "lacks other means of achieving" its goals, places the burden on DOC to *prove* that "proposed alternatives" will not do, and *commands* that DOC "must use" any "less restrictive means [that] is available," *Holt*, 574 U.S. at 364–65, DOC fails to acknowledge—let alone rebut—"obvious alternatives" and does not even try to "explain why" the alternatives put forward by Mr. Nuñez cannot be implemented. *Ramirez*, 142 S. Ct. at 1281.

The district court's opinion is deeply flawed. As the record makes clear, on each of Mr. Nuñez's three requests, DOC failed to carry its heavy burden under RLUIPA. Its response brief leaves no doubt. Now, almost eight years after Mr. Nuñez filed his complaint, this Court should reverse the district court and remove the substantial burdens DOC has placed on Mr. Nuñez's religious exercise.

## ARGUMENT

**I.    DOC's Denial Of Mr. Nuñez's Request To Engage In Congregate Prayer Violates RLUIPA.**

Mr. Nuñez has established a *prima facie* case under RLUIPA, so he is entitled to relief unless DOC can "show that its policy is the least restrictive means of furthering its compelling interests." *Holt v. Hobbs*, 574 U.S. 352, 356 (2015); *see* Resp. Br. 13 (acknowledging this burden).[1]  As

---

[1] DOC now attempts to argue that its categorical denial of Mr. Nuñez's requests to engage in congregate prayer and to consummate his marriage do not constitute a "substantial burden" on his religious exercise.  Resp. Br. 15, 23.  But the district court correctly explained that DOC did not "ma[k]e any challenge to Plaintiff's establishment of a *prima facie* case" at summary judgment.  JA009, 012, 015.  In any event, it is indisputable that Mr. Nuñez has established a *prima facie* case:  DOC has prohibited him from engaging in congregate prayer (publicly or privately), receiving a religious-based circumcision, and consummating his marriage.  These outright bans unquestionably impose a substantial burden on Mr. Nuñez's religious exercise.  *See Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007) ("[A] substantial burden exists where" the government "puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.").  If such outright bans "do not amount to a substantial burden," "it is hard to see what would." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2377 (2020).  So too, DOC's suggestion that these bans nonetheless "fulfil[l] several of Nuñez's wishes" misapprehends both the record and the law. *Compare* Resp. Br. 15, 22–23 ("[N]uñez is permitted to pray on his own in the privacy of his cell, and/or seated quietly with his visitors in the visiting room."), *with Holt*, 574 U.S. at 361–62 (explaining that, under "RLUIPA's 'substantial burden' inquiry," "whether the RLUIPA claimant is able to engage in other forms of religious exercise" is irrelevant).

DOC's response brief makes clear, it failed to prove that its unyielding refusal to accommodate Mr. Nuñez's request to engage in congregate prayer furthers any compelling interest or that its outright ban is the least restrictive means of furthering any such interest.

## A. DOC Has No Compelling Interest In Denying Mr. Nuñez's Request To Engage In Congregate Prayer.

RLUIPA does not allow DOC to "discharge [its] burden by pointing to 'broadly formulated interests'" in the abstract. *Ramirez v. Collier*, 142 S. Ct. 1264, 1278 (2022) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 726 (2014)). Rather, it must "demonstrate that [its] compelling interest is satisfied through application of [its policy] to [Mr. Nuñez]," *Holt*, 574 U.S. at 362; *see* Br. 24. As explained, the district court failed to hold DOC to this burden and conduct the "case-by-case analysis that RLUIPA requires," *Ramirez*, 142 S. Ct. at 1280, and DOC, for its part, tried to justify its ban on congregate prayer by pointing to "legitimate penological interest[s]" rather than a "compelling interest." Br. 26.

Remarkably, DOC's response brief takes this same tack, doubling down on its use of the outdated, inapplicable "legitimate penological interests" standard. *See* Resp. Br. 19 n.2 ("The term 'legitimate' has been used to characterize and discuss government interests in RLUIPA cases

before and after the *Holt v. Hobbs* decision.").  More still, DOC tries to justify its "decision not to focus on *Holt*" or its requirements by noting that, "[w]hile it is true that *Holt* alleged a RLUIPA violation, that case involved a restriction placed on facial hair" and "is not factually analogous" to the issues in this case.  *Id.*  This meager attempt to distinguish the Court's seminal RLUIPA case would make a first-year law student blush.  *Holt*'s jurisprudential impact has nothing to do with facial hair and everything to do with the test it applied and clarified, including its teaching that "RLUIPA, like RFRA … requires the Government to demonstrate that the compelling interest test is satisfied."  574 U.S. at 362–63.

Indeed, DOC's claim that the "legitimate penological interest" test applied in First Amendment cases is fungible with RLUIPA's strict scrutiny test is undermined by the very cases DOC relies on.  In this Court's opinion in *Watson v. Christo*, for example, the phrase "legitimate penological interests" appears only once, and that is for the sole purpose of explaining that "the prison's burden is greater under RLUIPA than the First Amendment."  837 F. App'x 877, 882 n.11 (3d Cir. 2020) (comparing *Turner v. Safley*, 482 U.S. 78, 89 (1987) with *Holt*, 574 U.S. at 352–54).

Similarly, in *Robinson v. Superintendent Houtzdale SCI* (the only other post-*Holt* case DOC cites) the phrase appears three times: twice simply to note that this was the standard the Magistrate Judge had applied below, and once more to *reverse* the Magistrate Judge precisely because that "is the wrong legal test for analyzing a regulation" under RLUIPA. 693 F. App'x 111, 114, 117 (3d Cir. 2017).

DOC's response offers only generalities and speculation as to why it prohibited Mr. Nuñez's congregate prayer request.  RLUIPA, however, requires more. Not one of DOC's broad, conclusory interests is sufficient to establish the *compelling* interest required under RLUIPA's "more focused inquiry." *Holt*, 574 U.S. at 363.

***Safety and Security.*** DOC does not and cannot show that its denial of Mr. Nuñez's request to engage in congregate prayer furthers its interest in "preventing contraband from entering the prisons via private contact visits."  Resp. Br. 16.  Given the opportunity to describe "the asserted harm of granting [a] specific exemption[]" to Mr. Nuñez, *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1881 (2021), the most DOC offers is a reiteration of the two conclusory assertions it presented at summary judgment: (1) that Mr. Nuñez "poses a specific security concern when it

comes to contraband being brought into the prison" and (2) that "it would be very difficult for security personnel to observe whether contraband is being passed" if Mr. Nuñez and his visitors are "standing up and bowing down repeatedly" while praying, Resp. Br. 5, 16. Just like at summary judgment, DOC provides no basis for either claim, suggesting that it expects this Court will simply "defer[] to [its] experience and expertise." Resp. Br. 14. But as explained, RLUIPA "does not permit such unquestioning deference." *Holt*, 574 U.S. at 364.

*First*, DOC's assertion that Mr. Nuñez poses a "direct" or "specific" threat regarding contraband has been often repeated but never substantiated. As Mr. Nuñez explains—and DOC does not dispute—the evidence shows that he has "never been issued a prison charge . . . for violating *any* visiting policy or rule." Br. 29–30 (emphasis added). The sole basis for DOC's assertion thus is the conclusory statement from a lone prison official who "expressed the belief" that Mr. Nuñez (somehow) presents a risk when it comes to smuggling in contraband, but failed to "point[] to any instance[]" of Mr. Nuñez ever doing so. *Holt*, 574 U.S. at 359; *see* JA236. As explained, this is insufficient. *See, e.g.*, *Holt*, 574 U.S. at 371

8

(Sotomayor, J., concurring) ("[P]rison policies 'grounded on mere specu-lation' are exactly the ones that motivated Congress to enact RLUIPA.").

*Second*, the notion that the movements of Islamic prayer will aid in the clandestine passing of contraband defies common sense. To be sure, it would be concerning if an inmate were in fact "able to conceal [illicit] items from security keeping watch," Resp. Br. 16, but DOC provides no explanation—let alone evidence—as to how "standing up and bowing down repeatedly" would facilitate that surreptitious conduct, *id.* Indeed, after considering the conduct DOC does allow in its visiting rooms—sit-ting in a group where each person has free use of their hands along with a table to obstruct a guard's vision—DOC's suggestion that a prayer in-volving two people prostrating on their knees, toes, forehead, and hands creates a greater risk of illicit activity "is hard to take seriously." *Holt*, 574 U.S. at 363; *see* Br. 39; JA292 (Nunez Decl. ¶ 34) (explaining that "prayer in congregation" requires Mr. Nuñez to lead a prayer with the visitor "standing next to me or behind me").

**Converting Neutral Space Into One Used for Religious Pur-poses.** Mr. Nuñez has already explained that his "*private* congregate prayer would take place in *private*, not in the 'visiting room,'" Br. 34, but

DOC maintains that "[i]f Nuñez engages in his congregate prayer in the way he wishes, no one else can reasonably meet at the same time given the noise and distraction," Resp. Br. 16. This claim is not only speculative, "it is nonsensical." Br. 34. Because DOC has failed to clarify, it remains a mystery how a congregate prayer occurring *in a different room* would "take[] away visiting time from other inmates" or could be a distraction to those inmates in another room. Resp. Br. 16.

DOC goes on to make another unelaborated claim that if private rooms for prayer were offered to some inmates and not others, the prison *might* devolve into chaos. That is, DOC claims that providing a religious accommodation *could* lead to "feelings of resentment" that *could* "manifest into assaults very quickly in the prison setting." Resp. Br. 17. DOC's response brief, just like its motion for summary judgment, "provides no evidence that *any* religious accommodation has *ever* led to [this] parade of horribles." Br. 34. The law is clear: This kind of "speculation is insufficient to satisfy [DOC's] burden," under RLUIPA. *Ramirez*, 142 S. Ct. at 1280.

**Staffing and Space.** In its final shot at establishing a compelling interest, DOC turns to the "classic rejoinder of bureaucrats throughout

history," *Holt*, 574 U.S. at 368—that "if Nuñez were to be given a private room to engage in … group prayers, other inmates would surely expect the same treatment." Resp. Br. 17. But as explained, the Supreme Court has rejected this "interest" time and again. *See, e.g.*, *Holt*, 574 U.S. at 368. And DOC once again provides "no evidentiary basis" for this argument in the first place. Br. 31.

Even more, DOC's resource-related concerns are completely unmoored from Mr. Nuñez's congregate prayer request. DOC points to a hypothetical flood of requests from other inmates, resulting in the need for "a virtually limitless number of rooms" along with countless "inmates [who] would likely demand/expect" religious items such as "prayer rugs, crosses, kneeling benches, [and] ceremonial pipes." Resp. Br. 17. But RLUIPA "take[s] cases one at a time," *Ramirez*, 142 S. Ct. at 1281, and in *this* case Mr. Nuñez has requested nothing more than a *single* space where he may engage in congregate prayer. DOC's "real concern seems to be with other, potentially more problematic requests down the line." *Ramirez*, 142 S. Ct. at 1281. In other words, DOC's fear of a "scarcity of resource[s]," Resp. Br. 17, has nothing to do with Mr. Nuñez's request,

and therefore cannot establish a compelling interest here. *Cf. Yellowbear v. Lampert*, 741 F.3d 48, 62 (10th Cir. 2014) (Gorsuch, J.).

Tellingly, though Mr. Nuñez pointed to several DOC policies that highlight its "inconsistent and underinclusive pursuit of its interests as applied to secular activities," Br. 32, DOC offered no response. For example, Mr. Nuñez pointed out that DOC has failed to explain why its "playrooms for the visiting children of inmates … complete with the 'accoutrement' of toys" do not raise the same concerns regarding contraband, inter-inmate jealousy, or scarcity of resources. *Id.* at 32–33. DOC remained silent. DOC also had the chance to explain why providing a "designated space within the prison" for outside Religious Advisors to counsel inmates does not raise identical concerns. *Id.* at 33. Once again, silence. As explained, under RLUIPA, this silence is fatal to DOC's claim of compelling interest. *See id.* at 31.

### B.   DOC's Ban On Congregate Prayer Is Not The Least Restrictive Means Of Furthering Its Purported Interests.

DOC comes nowhere close to satisfying the "exceptionally demanding" least-restrictive means standard required by RLUIPA. *Holt*, 574 U.S. at 364. As relevant here, where there are "obvious alternatives" to the government's policy, the government is charged with "explain[ing]

why" these alternatives are not viable. *Ramirez*, 142 S. Ct. at 1279, 1281. Both at summary judgment and in its response brief, DOC has made no attempt to do so.

Mr. Nuñez offered common-sense suggestions that would allow him to engage in congregate prayer in a manner compatible with DOC's interests in safety, neutrality, and resource allocation. But DOC responds to none of these suggestions. Mr. Nuñez explained that DOC could require him and his visitors "to space out at appropriate distances" (making it virtually impossible to pass contraband unnoticed), as well as "exercise its considerable latitude to schedule Nuñez's visits," thereby minimizing administrative issues or risk of inmate jealousy. Br. 39. DOC fails even to acknowledge these suggestions, and thus has offered not a single "plausible explanation" as to why its uncompromising policy is the *only* option. *Holt*, 574 U.S. at 371 (Sotomayor, J., concurring); *id.* at 365.

Instead, DOC hopes that its description of "an analogous case" will fill the holes in its least-restrictive-means argument. Resp. Br. 18 (citing *Vega v. Lantz*, No. 3:04-CV-1215-DFM, 2009 WL 3157586 (D. Conn. Sept. 25, 2009)). But DOC's reliance on an out-of-state, pre-*Holt* opinion is both misplaced and self-defeating. For starters, "when applying RLUIPA,

context matters," *Watson*, 837 F. App'x at 882, and the context of *Vega* is anything but "analogous" to the matter at hand. *Vega* involved an inmate who complained that a Connecticut prison "failed to provide or permit congregational prayer *five times daily*." 2009 WL 3157586, at *1 (emphasis added). This request is far more extensive than that of Mr. Nuñez, who has no issue with DOC retaining authority over the scheduling of his requested congregate prayer. *See* Br. 39.

The grand irony of DOC's reliance on *Vega*, moreover, is that the state prison in *Vega* already "had a regulation that *permitted* its inmates to engage in one congregate prayer per week." Resp. Br. 18 (citing *Vega*, 2009 WL 3157586, at *2) (emphasis added). In other words, here DOC attempts to justify a *categorical ban* on congregate prayer by pointing to a jurisdiction that *broadly offers* the very accommodation Mr. Nuñez requests. DOC does not provide a single "persuasive reason[] why it believes that it must take a different course," *Holt*, 574 U.S. at 369—it instead "ask[s] that [the Court] simply defer to [its] determinations," *Ramirez*, 142 S. Ct. at 1279. "That is not enough under RLUIPA." *Id.*

## II.    DOC's Denial Of Mr. Nuñez's Request For Conjugal Visits To Consummate His Marriage Violates RLUIPA.

On Mr. Nuñez's request for conjugal visits to consummate his marriage, rather than address the "focused" and "exceptionally demanding" strict scrutiny standard RLUIPA requires, *Holt*, 574 U.S. at 362–64, DOC attacks a strawman, arguing that "[p]risoners have no constitutional rights … to contact or conjugal visits" in general.  Resp. Br. 19.  Even if this were true, DOC can neither satisfy nor avoid its *statutory* burden under RLUIPA by pointing to a lesser (and inapplicable) *constitutional* burden.  As the Supreme Court has made clear, Congress enacted RLUIPA "in order to provide greater protection for religious exercise than is available under the First Amendment." *Holt*, 574 U.S. at 357, 359–61. DOC's appeal to general constitutional principles thus is, at best, a non-sequitur.[2]  Neither DOC's references to inapposite case law, nor its

---

[2] DOC's countless attempts to recast Mr. Nuñez's claim as involving "constitutional rights" and "difficult policy choices" also fall flat.  Resp. Br. 19–20.  Mr. Nuñez's conjugal-visit claim is straightforward:  DOC's ban on conjugal visits unlawfully burdens his religious exercise under RLUIPA by "prohibit[ing him] from obtaining a valid marriage … in the eyes of his religious community and Allah."  Br. 48.  He does not claim a "due process right to unfettered visitation," a "due process right to contact visits," a "freedom of association" right to conjugal visits, or a generic "constitutional right to an overnight family visit."  Resp. Br. 19–20.

reductionist mischaracterization of Mr. Nuñez's marital religious beliefs as no more than an "obligation[] regarding showing affection and love toward his spouse," Resp. Br. 22–23, permit DOC to eschew its statutory obligations under RLUIPA, *cf.* 42 U.S.C. § 2000cc-5(7)(A) (protecting "any exercise of religion, whether or not compelled by, or central to, a system of religious belief"); *Holt*, 574 U.S. at 362.

## A.  DOC Has No Compelling Interest In Denying Mr. Nuñez's Request To Consummate His Marriage.

Right at the starting gate, DOC's argument stumbles.  To defend its categorical refusal to allow Mr. Nuñez the opportunity to consummate his marriage, DOC continues to point to "legitimate penological interests."  Resp. Br. 23.  As explained, *supra* Part I.A, even the cases DOC relies on make clear that the "legitimate penological interest standard applies in the First Amendment context, but RLUIPA is broader than the First Amendment and requires the 'compelling government interest' and 'least restrictive means' test of strict scrutiny."  *Robinson*, 693 F. App'x at 117; *see* Resp. Br. 19 n.2 (citing *id.*).  In any event, DOC's broad, conclusory, and unsupported interests are insufficient to establish a compelling interest in denying Mr. Nuñez the opportunity to consummate his marriage.

The two purported interests DOC offers in its response are identical to the ones it invoked regarding Mr. Nuñez's request for congregate prayer and should be rejected for the same reasons. Again, "the government cannot discharge [its] burden by pointing to 'broadly formulated interests,'" *Ramirez*, 142 S. Ct. at 1278, and DOC's imprecise and generic "safety" and "staffing" interests are just that.

With regard to safety and security, DOC again claims that "Nuñez has shown himself to pose a direct threat regarding [the] introduction of contraband into the Department." Resp. Br. 23. But it still offers no evidence to support this assertion. Even more, DOC does not contest that Mr. Nuñez has never violated "*any* visiting policy or rule violation." Br. 30. In its response brief, DOC tries to backdoor another purported "safety" interest—"preventing sexual assaults on government property," Resp. Br. 24–25. But this too is pure speculation, as evidenced by DOC's failure to provide citation to any page in the record to support this assertion. Indeed, DOC does not "point[] to *any* instances in which this [happened] in [Pennsylvania] or elsewhere," *Holt*, 574 U.S. at 359, nor does DOC provide any reason to believe that *Mr. Nuñez* is likely to engage in such conduct.

DOC's complaints of lack of "staffing" and "space" fare no better. DOC again loses sight of RLUIPA, reiterating its global worry that "[i]f Nuñez is granted … an accommodation, certainly all inmates would expect the same, and the Department does not have the space to accommodate such requests." Resp. Br. 23–24; *see id.* at 7 (making the same point regarding congregate prayer space). But RLUIPA does not ask whether DOC has an interest in denying "*all inmates*" their (hypothetical) accommodation requests. Rather, DOC must demonstrate a compelling interest in avoiding "the asserted harm of granting [a] *specific* exemption[] to [the] *particular* religious claimant[]." *Fulton*, 141 S. Ct. at 1881 (emphasis added). DOC supplements its staffing concerns by suggesting it has an interest in avoiding the "absurd result" of a corrections officer "supervis[ing]" conjugal visits. Resp. Br. 24. But it still fails to cite a single case where a prison has even claimed that such an interest is compelling. *See* Br. 44–45.

Finally, DOC asserts a "legitimate penological interest [in] preventing sexually transmittable infections from entering and spreading around the prison population," but again fails to connect this health concern to Mr. Nuñez. Resp. Br. 24. DOC has no answer to "Mr. Nuñez's

repeated statements that he and his partner do not carry any STDs," nor did DOC even "attempt to verify this fact before denying the accommodation." Br. 45. DOC's only response is a blanket (and unsupported) assertion that "[t]here would be no way … to ensure that safe sex was occurring during a conjugal visit," Resp. Br. 24, which comes nowhere close to satisfy its burden to *prove* a compelling interest. Indeed, despite its burden to show that it "has [a compelling] interest in denying an exception to" Mr. Nuñez's, *Fulton*, 141 S. Ct. at 1881, DOC's *entire* analysis on this issue fails to cite *any* piece of evidence from the record. *See* Resp. Br. 22–25 (citing nothing).

### B. DOC's Ban On All Conjugal Visits, Even For Marriage Consummation, Is Not The Least Restrictive Means of Furthering Its Purported Interests.

DOC cannot establish that its complete ban on conjugal visits is the least restrictive means of furthering its purported security, safety, and health concerns without first "consider[ing] and reject[ing] other means." *Washington v. Klem*, 497 F.3d 272, 284 (3d Cir. 2007). "If a less restrictive means is available for the Government to achieve its goals, [it] must use it." *Holt*, 574 U.S. at 365 (citation omitted). Yet despite Mr. Nuñez raising several alternatives, DOC has "do[ne] nothing to rebut"—or even

*acknowledge*—those alternatives or other "obvious alternatives" to its rigid policy. *See Ramirez*, 142 S. Ct. at 1281.

Just like at summary judgment, rather than attempt to make the case-specific showing RLUIPA requires, DOC tries to satisfy the least-restrictive-means test by block quoting a state court opinion. Resp. Br. 21 (quoting *Thomas v. Corbett*, No. 458 M.D. 2013, 2019 WL 1312873, at *4 (Pa. Commw. Ct. Mar. 22, 2019)). This "attempt to satisfy the 'exceptionally demanding' least-restrictive-means test simply by pointing to a *different* case, from a *different* court, involving a *different* plaintiff with a *different* request" is simply inexplicable. Br. 49–50; *cf. Thomas*, 2019 WL 1312873, at *3 (government argued that "*[i]n this particular case*, to permit conjugal visits would appear to require the [DOC] . . . to place its imprimatur of approval on a situation that may well constitute a crime, *i.e.*, bigamy, if [Thomas] is indeed married to several women simultaneously" (emphasis added)).

DOC's further reliance on "case law in other areas of the country" is equally misguided. DOC cites to three opinions from the Eastern District of California to support its argument "that Nuñez has no right to conjugal visits." Resp. Br. 21–22 (citing *Owens v. Kernan*, No. 2:16-cv-

20

0167, 2016 WL 3361885 (E.D. Cal. June 16, 2016); *Shields v. Foston*, No. 2:11-cv-0015, 2013 WL 3456964 (E.D. Cal. July 9, 2013); *Washington v. Cate*, No. 1:11-cv-00264, 2014 U.S. Dist. LEXIS 12402 (E.D. Cal. Jan. 31, 2014)). First, two of these cases come before *Holt*, and the one decided after fails to mention *Holt* even once. Second, each involves a challenge to a state prison policy that otherwise *widely permits conjugal visits. See* Cal. Code. Regs., tit. 15 § 3177 (describing procedures and exclusion criteria for "extended overnight visits, provided for eligible inmates and their immediate family members"); *see also Shields*, 2013 WL 3456964 at *5–6 (analyzing whether state could justify its determination that a specific class of inmates—those "serving LWOP terms [life sentences without the possibility of parole]"—should be "den[ied] conjugal visits" (emphasis added)).

By attempting to justify its absolute prohibition on conjugal visits by relying on authority from a jurisdiction that widely accommodates that very practice, DOC once again makes Mr. Nuñez's case for him. In addition to the California law that DOC is clearly familiar with, Mr. Nuñez identified other similarly situated jurisdictions that "have successful conjugal visit programs that provide visits to the general prison

population and are *not* restricted to marriage consummation." Br. 52–53 (citing policies in California, New York, Washington, and Connecticut). In response, DOC offers nothing more than an unelaborated assertion that "there is no viable alternative" to its categorical ban. Resp. Br. 25. This is, without question, an "inadequate[] respon[se] to the less restrictive policies that [Mr. Nuñez] brought to the Department's attention." *Holt*, 574 U.S. at 372 (Sotomayor, J., concurring); *see Fulton*, 141 S. Ct. at 1882; *Mast v. Fillmore Cnty.*, 141 S. Ct. 2430, 2433 (2021) (Gorsuch, J. concurring).

At bottom, DOC's insistence that there is "no way" to further its interests without a categorical denial of *all* conjugal visits is not credible. Beyond giving DOC the chance to "consider a limited accommodation exclusively for the purposes of marriage consummation," Mr. Nuñez provided several commonsense strategies DOC could implement to fulfill its safety, health, and administrative goals, including pre- and post-visit security checks, STD testing, and strict regulation of clothing and accessories during conjugal visits. Br. 40, 49–50. DOC does not acknowledge, let alone *rebut*, "these obvious alternatives," *Ramirez*, 142 S. Ct. at 1281,

and thus does not come close to satisfying RLUIPA's least-restrictive-means test.

## III.  DOC's Denial of Mr. Nuñez's Request For A Religious Circumcision Violates RLUIPA.

DOC concedes that its "denial of [Mr.] Nuñez's request to be circumcised" has substantially burdened his religious exercise under RLUIPA. Resp. Br. 27.  Mr. Nuñez is therefore entitled to a religious circumcision unless DOC can *prove* it has a compelling interest in denying his request and it is advancing that interest in the least restrictive way.  *Ramirez*, 142 S. Ct. at 1277; *see City of Boerne v. Flores,* 521 U.S. 507, 509, 534 (1997) (strict scrutiny is the "most demanding test known to … law"). Before even reaching its alleged compelling interests, however, DOC's response stumbles.  *First*, DOC again claims it simply has a "legitimate penological interest" in denying Mr. Nuñez' request.  Resp. Br. 26–27.  As explained above, DOC needs to prove a compelling interest, not merely a legitimate interest. *Supra* Part I.A.

*Second*, DOC repeatedly cites cases applying irrelevant legal standards. *Winslow* and *Cowher*, for instance, are constitutional cases applying the Eighth Amendment's "deliberate indifference" standard, which has nothing to do with this case.  *See Winslow v. Prison Health Servs.*,

406 F. App'x 671, 675 (3d Cir. 2011); *Cowher v. Pike Cnty. Corr. Facility*, No. 3:16-cv-02259, 2019 WL 3302415, at *11 (M.D. Pa. July 23, 2019). *Fields v. Paramo* is similarly inapplicable. No. 2:16-cv-1085, 2019 WL 4640502 (E.D. Cal. Sept. 24, 2019). There, the court analyzed the plaintiff's claim under the deferential *Turner* standard (upholding any restriction "reasonably related to a legitimate penological interest") because the court found his RLUIPA claim moot. *Id.* at *4, 7–8; *see Gad v. Northampton Cnty.*, No. 18-cv-3900, 2023 WL 2026630, at *12 (E.D. Pa. Feb. 15, 2023) ("The *Turner* standard is 'much less demanding' than the strict scrutiny standard applied to RLUIPA claims." (citation omitted)).

The only case DOC cites that even arguably applied RLUIPA is *Vega*—an out-of-circuit, unpublished, pre-*Holt,* magistrate judge opinion which relied heavily on its earlier-in-the-opinion *Turner* analysis to deny a request for "elective circumcision." *Vega v. Lantz*, No. 3:04-cv-1215, 2013 WL 6191855, at *8 (D. Conn. Nov. 26, 2013). Even on its own terms, however, *Vega* provides no support for DOC. *Vega* concluded that (1) prisoner identification and (2) minimizing cost were both compelling interests. *Id.* Here, DOC (for obvious reasons) does not claim that prisoner identification is a compelling interest, and, as explained *infra*, DOC has

not come close to demonstrating that cost saving is a compelling interest in this case.

### A. DOC Has No Compelling Interest In Denying Mr. Nuñez's Religious-Based Request For A Circumcision.

DOC failed to prove that any government interest it identified—cost, health-related complications, and "no cosmetic surgeries"—is compelling or furthered by its denial of Mr. Nuñez's request for a religious-based circumcision.

*Cost.* As explained, RLUIPA requires prison systems to spend resources to accommodate religious exercise.  Br. 55–56; *see* 42 U.S.C. § 2000cc-3(c).  And circumcising Mr. Nuñez is a low-cost, one-time procedure that DOC can certainly afford to accommodate.  *See* Br. 56.  DOC's only response is to claim that it has a legitimate penological interest in "conserving government resources."  Resp. Br. 27.  But DOC fails to explain how a low-cost, outpatient surgery could possibly strain DOC's 2.8-billion-dollar budget.  Even *assuming* an estimated cost of $3,500 for the surgery, Resp. Br. 28, that is far less than "sexual reassignment surgery" (which DOC does not dispute it now covers and has permitted), Resp. Br. 28-29, and far less than this litigation has already cost the Department.  Because DOC pays for sexual reassignment surgeries that can cost

upward of $100,000, it cannot demonstrate a compelling interest in denying Mr. Nuñez's request for a one-time, low-cost, religiously-mandated surgery. *See* Br. 61.

DOC also fails to demonstrate a compelling interest in cost saving because it has not come forward with any information specific to the cost of *Mr. Nuñez's* circumcision. Under RLUIPA, DOC has the burden of showing that its alleged interest is compelling *as applied to Mr. Nuñez*—speculation and generalities do not suffice. *See* Br. 16; *Holt*, 574 U.S. at 362–63. But here, DOC merely lists the basic steps required to complete a circumcision in prison. *See* Resp. Br. 27. It does not provide any information specific to Mr. Nuñez's circumstances, nor has it provided any information on how much it would cost for Mr. Nuñez *specifically* to be circumcised. By failing even to analyze its alleged interest as applied to Mr. Nuñez, DOC cannot carry its burden of demonstrating a compelling interest in cost saving.

**Health complications.** As Mr. Nuñez explained, the risk of health complications from circumcision is vanishingly small. Br. 58. Regardless, Mr. Nuñez has agreed to sign an informed consent waiver assuming any medical or liability risks that may occur after surgery. *Id*. DOC has

no response.  Instead, DOC merely repeats its concern that it would have to foot the bill should a complication arise.  Resp. Br. 28 (Mr. Nuñez would "come back into the prison with the potential for further complications, which *the Department would have to pay for*" (emphasis added)).  This overlooks, as Mr. Nuñez has repeatedly explained, his willingness to assume the (unlikely) risk of health complications.  Thus, the only health-related concern articulated by DOC (cost to the prison) is easily alleviated by Mr. Nuñez's willingness to assume any liability that DOC might otherwise incur.

What is more, the health complications associated with "sexual reassignment surgery," Resp. Br. 28, are far more common and costly than those which might arise from circumcision, Br. 60–61.  Because DOC is willing to assume much greater risks following "sexual reassignment surgery and related treatment," JA264, it cannot hope to demonstrate that an interest in limiting health complications is compelling as applied to Mr. Nuñez's modest request for a religious circumcision.

***"No cosmetic surgeries."***  As explained, Mr. Nuñez's religious circumcision is not cosmetic surgery.  It is a religious mandate, not an attempt to improve his physical appearance or—as DOC claimed without

any support—increase "sexual gratification."  Br. 59, 60.  DOC has no response.  It simply asserts that it has a policy barring cosmetic surgeries, and that Mr. Nuñez's surgery is cosmetic because he "seeks to compel the Commonwealth government to *pay* for his circumcision."  Resp. Br. 28.  This is a *non sequitur*.  Tellingly, DOC offers no other response to Mr. Nuñez's argument that a religious circumcision is not cosmetic surgery.  Because DOC's policy does not even apply to Mr. Nuñez's surgery, its application certainly cannot be compelling.

Even if Mr. Nuñez's surgery qualified as cosmetic, merely pointing to the existence of a policy banning cosmetic surgery is not sufficient to satisfy strict scrutiny.  The existence of a "no dogs allowed" sign is not itself a compelling reason to exclude dogs from the park.  To justify its canine exclusion, the government would have to explain *why* it adopted the policy.  Here, all DOC does is point to its policy.  But its policy is not self-justifying, and DOC's silence regarding the policy's rationale leaves mere speculation, which is not enough.

Finally, DOC argues that comparing this case to DOC's decision to pay for sex reassignment surgery is inapt because (1) Mr. Nuñez did not preserve an equal protection argument, and (2) the record does not

address sex reassignment surgeries "during the time frame of the events in this lawsuit." Resp. Br. 29. Both objections miss the mark.[3]

*First*, Mr. Nuñez is not making an equal protection claim. Rather, his argument is that, by paying for sex reassignment surgery, DOC has undermined its claim that it has a compelling interest in denying his religious circumcision. *See* Br. 60–61; *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993) (explaining that an interest is not compelling if "[t]he proffered objectives are not pursued with respect to analogous nonreligious conduct"). Here, because DOC pays for sex reassignment surgeries—which are undeniably expensive and fraught with potential health complications—it cannot claim that denying *this* religious circumcision (a far cheaper and simpler procedure) is necessary to save money and prevent health complications. *Cf. Reed v. Town of Gilbert*, 576 U.S. 155, 172 (2015).

*Second*, DOC's current actions and policies related to other surgeries are directly relevant to Mr. Nuñez's request. DOC says that "no facts

---

[3] Mr. Nuñez takes no position on DOC's decision to pay for sexual reassignment surgeries; his point is simply that by permitting and agreeing to pay for such surgeries, DOC has all but abandoned any argument that it cannot accommodate his request for a religious circumcision.

of record" describe its position on "transgender health care" during this lawsuit. Resp. Br. 29. But as DOC admits, the record evidence cited by Mr. Nuñez is DOC's own official policy *removing* sexual reassignment surgery from its list of "non-provided medical services." *Id.*; JA264. This Court should firmly reject DOC's attempt to flee from its own official policy. Further, this Court can undoubtedly take judicial notice of the fact that, since adopting this policy in 2015, DOC has paid for a sexual reassignment surgery. Br. 61 n.15; *see e.g., Gov't Emps. Ret. Sys. of Virgin Islands v. Gov't of Virgin Islands*, 995 F.3d 66, 92 (3d Cir. 2021).

## B. DOC's Ban On All Circumcisions, Even Those With A Religious Basis, Is Not The Least Restrictive Means Of Furthering Its Purported Interests.

DOC has not shown why it cannot accommodate his religious circumcision when other prison systems—most notably Florida's (the third largest in the country)—allow the same procedure. Br. 62–64. Besides simply stating as much in a single conclusory sentence, Resp. Br. 29, DOC says *nothing* about how its ban on religious circumcision is actually the least restrictive means of advancing its alleged interests. Nor does the record contain any evidence that DOC investigated—let alone considered—how other jurisdictions accommodate requests for religious

circumcisions. *See* Br. 64; *Washington*, 497 F.3d at 284 (concluding that "the Government must consider and reject other means before it can conclude that the policy chosen is the least restrictive means"). By simply ignoring other jurisdictions, DOC has failed to satisfy the least restrictive means requirement of strict scrutiny.

## CONCLUSION

The Court should reverse the district court's grant of summary judgment.

June 21, 2023                                    Respectfully submitted,

                                                 /s/ *Ellen Crisham Pellegrini*
Nicholas R. Reaves                               Gordon D. Todd
YALE LAW SCHOOL                                  Ellen Crisham Pellegrini
FREE EXERCISE CLINIC                             Cody L. Reaves
1919 Pennsylvania Ave. N.W.                       Victor T. Hiltner
Suite 400                                        SIDLEY AUSTIN LLP
Washington, D.C. 20006                           1501 K Street, N.W.
Tel.: (202) 955-0095                             Washington, D.C. 20005
nicholas.reaves@yale.edu                         Tel.: (202) 736-8000
                                                 Fax: (202) 736-8711
                                                 epellegrini@sidley.com

*Counsel for Fernando Nuñez, Jr.*

## CERTIFICATE OF BAR MEMBERSHIP, IDENTICAL COMPLI-ANCE OF BRIEFS, AND VIRUS CHECK

I hereby certify that I am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.

I further certify that the text of the electronically filed copy of the reply brief and the text of the hard copies filed or to be filed with the Court are identical.

I further certify that the electronically filed copy of the reply brief has been scanned for viruses using Netskope, Inc., version 93.0.1.944. No virus was detected.

/s/ *Ellen Crisham Pellegrini*
Ellen Crisham Pellegrini

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and the rules of this court, because this brief contains 6,352 words (as determined by the Microsoft Word 2016 word-processing system used to prepare the brief), excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Circuit Rule 32(e)(1).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using the 2016 version of Microsoft Word in 14-point Century Schoolbook font.

/s/ *Ellen Crisham Pellegrini*
Ellen Crisham Pellegrini

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of June, 2023, I caused a copy of this brief to be filed with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users, including:

Abby N. Trovinger
Chase M. Defelice
Pennsylvania Department of Corrections
Office of Chief Counsel
1920 Technology Parkway
Mechanicsburg, PA 17050
atrovinger@pa.gov
chdefelice@pa.gov

/s/ *Ellen Crisham Pellegrini*
Ellen Crisham Pellegrini