

SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, D.C. 20005
+1 202 736 8000
+1 202 736 8711 FAX

AMERICA • ASIA PACIFIC • EUROPE

+1 202 736 8196
EPELLEGRINI@SIDLEY.COM

October 19, 2023

Patricia S. Dodszuweit
Clerk of Court
United States Court of Appeals for the Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

    Re:    *Fernando Nuñez, Jr. v. Tom W. Wolf, et al.* (No. 22-3076)

Dear Ms. Dodszuweit:

    I am writing on behalf of Appellant Fernando Nuñez, Jr., in response to this Court's letter directing the parties to submit supplemental letter briefs addressing whether Mr. Nuñez's transfer from SCI-Huntington to SCI-Mahanoy means that "some or all of the claims raised in his current complaint are moot." Doc. 43 (citing *Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir. 2003) (per curiam)). In short, as appellees' recognize in their letter brief, *see* Doc. 45 ("Ltr."), Mr. Nuñez's transfer has not affected his underlying claims and none of Mr. Nuñez's claims are moot.

    In *Sutton*, this Court held that when there is a "reasonable likelihood that the same complaining party would be subjected to the same action again," an inmate's transfer from a facility does not moot "equitable and declaratory claims." 323 F.3d at 248. Mootness is "an intensely factual inquiry," *Talley v. Clark*, 851 F. App'x 306, 308–09 (3d Cir. 2021), and the burden is on the defendant to "demonstrate that there is no reasonable expectation that the wrong will be repeated," *Sutton*, 323 F.3d at 248; *see City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n.10 (1982) (explaining that a case "might become moot" if subsequent events "made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur"). As their letter concedes, appellees' cannot meet this burden for any of Mr. Nuñez's claims.

    Mr. Nuñez has not resided at SCI-Huntingdon since September 26, 2016. *See* Dist. Ct. Dkt. 10 (Notice of Change of Address). If a facility transfer had mooted Mr. Nuñez's claims, one might have expected appellees to raise that point when Mr. Nuñez was transferred to SCI-Albion. *See* Dist. Ct. Dkt. 10 (Notice of Change of Address). Or when he was transferred to SCI-Somerset. *See* Dist. Ct. Dkt. 12. Or when he was transferred to SCI-Mahanoy. *See* Dist. Ct. Dkt. 38. But appellees did not, and for good reason: Mr. Nuñez's claims challenge "several state wide policies and regulations of the Pennsylvania Department of Corrections," Amend

Sidley Austin (DC) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

# SIDLEY

Page 2

Compl. at 1—not policies or conditions specific to SCI-Huntingdon—and the record makes clear that those policies have been consistently applied to Mr. Nuñez since his transfer from SCI-Huntingdon in 2016, including at SCI-Mahanoy. Indeed, no one disputes that appellees continue to forbid Mr. Nuñez from engaging in congregate prayer, deny his conjugal visit request, and deny him a circumcision.

On Mr. Nuñez's conjugal visit and circumcision request, appellees' position is clear: Mr. Nuñez's religious exercise would be substantially burdened in the same way "at any Pennsylvania prison," so his claims are not moot. Ltr. 2. That is correct. A prisoner's transfer to another facility "will not moot" claims for equitable and declaratory relief when the "same policy, practice, or condition continues to apply" to the prisoner at his new facility. *Reid v. Hurwitz*, 920 F.3d 828, 834 (D.C. Cir. 2019). In other words, there is far more than a "reasonable likelihood" that Mr. Nuñez "would be subjected to the same action again" at SCI-Mahanoy—he already has been, and for years. *Sutton*, 323 F.3d at 248.

On Mr. Nuñez's congregate prayer request, appellees' letter likewise admits that this claim is not moot. Appellees begin discussion of this claim by informing the court that Mr. Nuñez "would be permitted" to take advantage of a COVID-era "[v]irtual visitation" policy "to pray with his family *virtually*." Ltr. 2. Notably, though appellees say that this policy permits Mr. Nuñez to pray "in the manner he deems necessary in his Amended Complaint," Ltr. 2, they do not take the position that this moots Mr. Nuñez's congregate prayer claim. Rather, appellees say that this policy "provides another least restrictive means to consider in this case" that was "not in existence at the time Nuñez began this lawsuit." Ltr. 2. This call to consider a new "least restrictive means … in this case" is a clear concession that Mr. Nuñez's congregate prayer claim is not moot.

Even more, appellees' attempt to tack on a brand new least-restrictive-means argument is wholly improper. For one, this Court asked for letter briefs addressing potential mootness, not raising new merits arguments. For another, despite having this policy on the books since at least early 2020—after "COVID thwarted in person visits," Ltr. 2—appellees made no mention of this policy (or this newfound argument) during summary judgment briefing below or in their response brief before this Court. Nor would it have mattered if they did: Mr. Nuñez's congregate prayer claim targets the "state-wide policy that prohibits [Mr. Nuñez] and his visitors from congregating in prayer *during contact visits* in a manner consistent with [Mr. Nuñez's] religious beliefs." Amend. Compl. at 11 (emphasis added). A "virtual" congregate prayer—itself an oxymoron—does not permit prayer in the manner Mr. Nuñez seeks in his amended complaint.

So too, RLUIPA's "exceptionally demanding" least-restrictive-means test requires the government to demonstrate that it "lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y]." *Holt v.*

# SIDLEY

Page 3

*Hobbs*, 574 U.S. 352, 364–65 (2015); *see* 42 U.S.C. § 2000cc-1(a).  That means "prov[ing] with evidence that its rules are narrowly tailored to advance a compelling interest with respect to the specific person it seeks to regulate."  *Mast v. Fillmore Cnty.*, 141 S. Ct. 2430, 2433 (2021) (Gorsuch, J., concurring); *see Ramirez v. Collier*, 142 S. Ct. 1264, 1280 (2022).  A fledgling argument in an eleventh-hour letter brief comes nowhere close to satisfying this "exceptionally demanding" test.

In sum, the record below shows that the state-wide policies Mr. Nuñez challenges here have been applied to him at SCI-Mahanoy *for years*, just as they were applied at SCI-Huntingdon.  Those policies have—since 2015, when Mr. Nuñez filed his original complaint—substantially burdened his religious exercise by preventing him from engaging in congregate prayer, having a conjugal visit to consummate his marriage, and receiving a circumcision.  Appellees have failed to "demonstrate that there is no reasonable expectation that the[se] wrong[s] will be repeated."  *Sutton*, 323 F.3d at 248.  Indeed, appellees have made clear that these wrongs will continue until a court steps in.

For all these reasons, none of Mr. Nuñez claims are moot.

Respectfully submitted,

/s/ *Ellen Crisham Pellegrini*

| | |
|---|---|
| Nicholas R. Reaves | Gordon D. Todd |
| YALE LAW SCHOOL | Ellen Crisham Pellegrini |
| FREE EXERCISE CLINIC | Cody L. Reaves |
| 1919 Pennsylvania Ave. N.W. | Rebecca C. Brooks |
| Suite 400 | SIDLEY AUSTIN LLP |
| Washington, D.C. 20006 | 1501 K Street, N.W. |
| Tel.: (202) 955-0095 | Washington, D.C. 20005 |
| nicholas.reaves@yale.edu | Tel.: (202) 736-8000 |
| | Fax: (202) 736-8711 |
| | epellegrini@sidley.com |

*Counsel for Fernando Nuñez, Jr.*

cc: Counsel of Record by ECF